UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHELLE BREIDING,

    Plaintiff,

v.                                                                 CASE NO. 6:19-CV-689-Orl-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). Plaintiff argues that the administrative decision is not supported by substantial evidence, because the Administrative Law Judge (ALJ) failed to investigate the apparent conflict between the vocational expert's (VE) testimony and the Dictionary of Occupational Titles (DOT). After considering the parties' brief (doc. 17) and the administrative record (doc. 10), I find the ALJ's decision is not supported by substantial evidence. I reverse and remand the Commissioner's decision.[1]

    *A.*    *Background*

Plaintiff Michelle Breiding was born on June 27, 1965. She graduated from high school and attended one year of college. Before her disability onset date of May 1, 2013, Plaintiff worked as a social worker and a customer service representative. As a social worker, she interviewed clients to determine their eligibility for Medicaid, food stamps, and other emergency public assistance, and she managed the Florida Women, Infants, and Children (WIC) office in her area.

---

[1] The parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c).

Years before her onset date, a ruptured disc in Plaintiff's back impeded the flow of spinal fluid into her brain. She underwent emergency surgery and, according to Plaintiff, suffered nerve damage. As a treatment, "I was getting my nerve endings burnt every six months or so." (R. 33) Plaintiff had insurance coverage through her husband's job. But about a year before her administrative hearing, Plaintiff's husband died in "a tragic accident." (*Id*.) Her mom and dad also passed away around that same time and within weeks of each other. So, Plaintiff not only lost her entire family within a year, she lost her health insurance. She could no longer afford the treatment for her nerve damage. But without it, Plaintiff explains, she "gets huge cramps in my neck. My neck will get stuck in place. I can't turn it one way or the other. If I put my head up for an extended period of time, I can't move it. If I put it down, I can barely get it back up. I have lost feeling down both of my arms. My arms will go numb off and on during the day, and when they're not numb sometimes there's severe pain down to the elbows in both arms." (*Id*.) She drops things frequently because of the numbness in her hands. Her neck cramps whenever she drives. Pain medication makes her throw up, so she stopped taking it. Her pain level is 8 or 9 out of 10 every day. (R. 34)

Plaintiff used to walk for exercise. "But I've had to – I've had to cut that totally out because if I walk slow, my back kills me, so I can only walk fast. Well, I have asthma, severe asthma, so now I can't walk fast anymore because the asthma's been acting up and I can't breathe. Everything's a Catch-22. It seems like there's an issue with every part." (R. 36) Severe glaucoma impacts her peripheral vision. And she wakes up every two hours in the throes of a panic attack: "I just feel like my heart's racing really fast, and it's kind of hard to breathe, and this overwhelming

feeling of wanting to escape, just get away from it all. It's just nothing but worry after worry after worry starts getting in my mind and flooding it, can't make it stop." (R. 39)

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of disorders of "cervical degenerative disc disease status post-SCDF, asthma, OAD, anxiety and depression." (R. 12) The ALJ determined that Plaintiff is not disabled as she retains the RFC to perform light work except:

> [Plaintiff needs] a 30-minute sit stand option and occasional postural activities (climb, balance, stoop, kneel, crouch, and crawl) occasional reaching, occasional overhead reaching, and no more than frequent handling and fingering on both sides. No more than frequent need for depth perception and no more than occasional need for field of vision. No concentrated exposure to extremes of heat or cold, respiratory irritants (dust, fumes), vibrations, work around moving mechanical parts, or work at unprotected heights. Additionally the claimant is limited to performing simple tasks with little variation that take a short period of time to learn (up to and including 30 days): i.e., jobs with a Specific Vocational Preparation (SVP) level of 1 or 2: able to deal with the changes in a routine work setting: and able to relate adequately to supervisors with occasional contact with co-workers and the general public.

(R. 14) The ALJ found that, with this RFC, Plaintiff could not perform her past relevant work. After consulting a VE, the ALJ determined Plaintiff could work as a laminating machine operator grader and a bakery worker on a conveyor line. The ALJ stated, "[p]ursuant to 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the DOT." (R. 20) The Appeals Council denied review. Plaintiff, her administrative remedies exhausted, filed this action.

    B.    *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy because of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of*

4

*Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    Discussion

        1.    DOT vs. VE

Plaintiff argues remand is required because there is an apparent conflict between the VE's testimony and the DOT.[2] I agree. The law in this circuit recently changed regarding this scenario. In *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1353-54 (11th Cir. 2018), the Eleventh Circuit held that an ALJ has an affirmative duty to (1) identify any apparent conflicts between a VE's testimony and the DOT, (2) ask the VE about the conflict, and (3) explain in the decision resolution of the conflict. Per *Washington,* ALJs may no longer simply rely on a VE's statement that that his testimony does not conflict with the DOT. *Id.,* at 1361. Rather, binding Eleventh Circuit law now states "that [Social Security Ruling] SSR 00-4p imposes an independent, affirmative obligation on the part of the ALJ to undertake a meaningful effort to uncover apparent conflicts, beyond merely asking the VE if there is one." *Id.* at 1364.

---

[2] The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).

Here, during the administrative hearing, the ALJ asked the VE to assume a hypothetical individual who could perform a reduced range of light work, but "[f]rom a mental standpoint, they would be limited to performing simple tasks with little variation that take a short period of time to learn. That would be up to and including 30 days and indicating their jobs with a Specific Vocational Preparation or SVP level of 1 or 2[.]" (R. 48-49) The VE responded that such an individual would be capable of performing the jobs of laminating machine operator grader (reasoning level of 2) and bakery worker on conveyor line (reasoning level of 1). (R. 49-50)[3] When asked whether his testimony was consistent with the DOT, the VE responded "No, sir. Not really conflicts. However, testimony that's not defined within the DOT related to a sit-stand option, overhead reach, time off task and absenteeism and a variation on break times, that would all be based on my professional experience as well." (R. 51-52)

Citing to the DOT definition of reasoning level two, Plaintiff posits that a person limited to simple tasks could not perform the job of laminating machine operator grader. Reasoning level two requires an employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT, App'x C (4th ed. 1991), 1991 WL 688702. Plaintiff asserts the ALJ had a duty to elicit a reasonable explanation for the apparent conflict between the VE and the DOT before relying on the VE's testimony and erred by failing to do so. I agree.

---

[3] Reasoning levels, which range from one to six, measure a claimant's ability to engage in certain basic functions related to education and require the claimant to be capable of carrying out instructions and perform mental tasks. DOT, App'x C (4th ed. 1991), 1991 WL 688702.

Although the Eleventh Circuit has yet to address this specific issue, applying *Washington*, courts within the circuit have held there is an apparent conflict when an ALJ's hypothetical question limits a claimant to simple tasks and the VE names jobs with reasoning levels of two or three.[4] *See generally Daniel v. Comm'r of Soc. Sec.*, case no. 5:19-cv-83-Oc-MAP, 2020 WL 1485900 (M.D. Fla. Mar. 27, 2020) (finding apparent conflict between claimant's limitations to simple, routine, repetitive work and simple work-related decisions, and jobs identified by VE requiring reasoning level of 2 according to DOT); *Spano v. Saul,* case no. 5:19-cv-82-Oc-JRK, 2020 WL 1466762 (M.D. Fla. Mar. 26, 2020) (collecting cases and finding apparent conflict between limitation to simple tasks and jobs with reasoning levels of 2 or 3); *Nadile v. Saul*, case no. 8:19-cv-9-T-CPT, 2020 WL 1430701 (M.D. Fla. Mar. 24, 2020) (finding it "not clear that a person with Plaintiff's mental limitations to simple, routine repetitive job tasks would be able to successfully carry out the duties of a small parts assembler, office helper, or copy machine operator" all jobs that DOT classifies as reasoning level of two and remanding where neither VE nor ALJ noticed, or resolved, apparent inconsistency at hearing or anytime thereafter); *Congdon v. Saul*, case no. 8:19-cv-274-T-SPF, 2019 WL 563538 (M.D. Fla. Feb. 5, 2020) (remanding because ALJ violated affirmative obligation to investigate and resolve "apparent conflict" where claimant "limited to simple, routine, repetitive task[s]" and ALJ concluded claimant could perform

---

[4] The Eleventh Circuit has not addressed this issue.  Notably, in a *per curium* decision, it stated "this Court has not yet decided in a published opinion whether a limitation to simple, routine repetitive work is inconsistent with a job that requires a general education development reasoning level of three."  *See Wooten v. Comm'r of Soc. Sec*., 2019 WL 5092898 (11th Cir. Oct. 11, 2019). In *Wooten*, the Eleventh Circuit decided it "need not resolve that question" because one of the three jobs identified by the ALJ was the job of final assembler with a reasoning level of one, the lowest level, which was consistent with the RFC, such that even if the ALJ had erred in identifying two jobs that required a reasoning level of three that apparently conflicted with the RFC, the error was a harmless one.  *Wooten*, at *2.

jobs identified by VE with reasoning levels of 2 or 3); *Salermo v. Saul,* case no. 8:18-cv-979-T-TGW, 2019 WL 4595157, at *3 (M.D. Fla. Sept. 19, 2019) (recognizing Eleventh Circuit's broad definition of term "apparent" in *Washington* and explaining "[t]he DOT states that, unlike reasoning level 1, reasoning level 2 requires the ability to carry out detailed instructions. That appears to be inconsistent with simple work."); *Saffioti v. Comm'r of Soc. Sec.*, case no. 2:17-cv-143-FtM-29CM, 2019 WL 1513354, at *3 (M.D. Fla. Apr. 9, 2019) (remanding because ALJ did not fulfill obligation to resolve apparent conflict between claimant's limitation to simple and routine tasks and short and simple instructions and jobs identified by VE requiring reasoning level of 2); *Borroto v. Comm'r of Soc. Sec.*, case no. 2:17-cv-673-FtM-99CM, 2019 WL 488327, at *9-10 (M.D. Fla. Jan. 8, 2019), report and recommendation adopted, 2019 WL 290599 (Jan. 23, 2019) (finding ALJ erred by failing to resolve apparent conflict where claimant limited to "simple, routine tasks" and VE identified jobs requiring reasoning levels of 2 or 3).

Although the Commissioner acknowledges that *Washington* imposes an affirmative duty on the ALJ to identify apparent conflicts and to resolve them, he maintains that in this case *Washington* is inapplicable because a limitation to simple tasks with little variation does not apparently conflict with reasoning level 2 as contemplated in the DOT (doc. 17 at 19-20). Citing to dictionary definitions of "simple tasks," the Commissioner states that the DOT's requirements "align with – rather than conflict with – the limitation to simple tasks with little variation." (*Id*. at 19). The Commissioner also asserts that the term "simple tasks" is a feature of the Commissioner's regulatory definition of "unskilled work," "exactly the type of work … encompassed by jobs identified by the VE." (*Id*. at 20). Explaining that the regulatory definition of the term "unskilled work" is work that "needs little or no judgment to do simple duties that can be learned on the job

8

in a short period of time," the Commissioner concludes that a simple task and a simple duty are one and the same. *See* 20 C.F.R. § 404.1568(a); doc. 19 at 21. Finally, the Commissioner cites cases from other circuits and pre-*Washington* cases in this circuit, to persuade me to conclude that a limitation to simple tasks is consistent with jobs with a DOT reasoning level of 2. I am not persuaded.

Under *Washington*, the issue is not whether there is a conflict between simple tasks with little variation and jobs that require a reasoning level of 2 under the DOT. Rather, the issue is whether there is an "apparent conflict" between those two. And the Eleventh Circuit in *Washington* broadly defined that term:

> An "apparent conflict" is thus more than just a conflict that is made apparent by the express testimony of the VE. It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case.

906 F.3d at 1365. The court also stated, "[A]pparent should be taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT. Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion. We take the word 'apparent' to mean 'seeming real or true, but not necessarily so." *Id.* at 1366.

Following *Congdon, Salermo, and Saffioti,* this case involves at least an "apparent" conflict (as that term is defined in *Washington*) between Plaintiff's limitation to simple tasks, and the job the VE identified for her, a laminating machine operator grader, which requires a reasoning level

9

of 2 under the DOT. Hence, I find the ALJ erred by failing to fulfill his obligation to identify the conflict(s) and resolve them.[5]

This brings up another issue. The ALJ also identified at step five the job of bakery worker on a conveyor line (DOT code 524.687-022) as within Plaintiff's RFC. (R. 20) Step five requires the ALJ to identify jobs a claimant can perform within her RFC that exist in significant numbers in the national economy. *See* 20 C.F.R. §404.1560(c). "Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country." *See Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005) (citing 20 C.F.R. § 404.1566(a)).

Unlike the job of laminating machine operator grader (reasoning level of 2), the bakery worker job requires a reasoning level of 1 under the DOT. After identifying the bakery worker job in response to the ALJ's hypothetical question, the VE said, "Just a second. As far as employment numbers for that particular DOT, actually it's very limited, only approximately **48** in the national economy under that specific DOT code." (R. 50) (emphasis added) The ALJ, however, misquoted the VE, finding the number of bakery jobs available under that DOT code as **48,000**. (R. 20) Although the Eleventh Circuit has not set a minimum threshold on national job numbers for purposes of an ALJ's step five requirement, I have not located any cases holding that

---

[5] As a judge in this district recently commented, there is a need for more clarity on this issue: "It is appropriate to add that there is uncertainty whether reasoning levels 2 and 3 are inconsistent with a restriction to simple work. Accordingly, the Commissioner could clarify this area by appealing one of those decisions. The overburdened law judges in this area were blindsided by *Washington's* new mandate, in light of the prior decision in *Jones v. Apfel*, 190 F.3d 1224, 1229-30, that the testimony of a vocational expert 'trumps' the DOT when the two are in conflict. I expect that there are a number of cases in the pipeline that present this issue involving reasoning level 2 or 3." *Salermo, supra,* at *5 (Wilson, J.).

10

48 jobs nationally is a significant number. *See Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (finding 840 jobs available in national economy to be a significant number). I find the Commissioner's pointing to 48 jobs in the national economy falls far below his burden for meeting his step five demand to show that Plaintiff possesses the RFC to perform a type of work that exists in significant numbers in the national economy. Remand is required on this issue as well.

*D.     Conclusion*

    For the reasons stated above, it is ORDERED:

        (1) The Commissioner's decision is REVERSED and REMANDED for further administrative proceedings consistent with this Order; and

        (2) The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

    DONE and ORDERED in Tampa, Florida on April 20, 2020.

_Mark A. Pizzo_
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

12